PEOPLE v McCHESTER

Docket No. 318145. Submitted April 14, 2015, at Detroit. Decided May 5, 2015, at 9:00 a.m. Leave to appeal sought.

Kristopher K. McChester pleaded *nolo contendere* in the Genesee Circuit Court to a charge of unarmed robbery, MCL 750.530, for having entered a gas station, approached the cashier, and demanded merchandise and cash while making a gesture that suggested he had a gun in his pocket. The court, Archie L. Hayman, J., sentenced defendant as a second-offense habitual offender, MCL 769.10, to 87 months to 22½ years in prison. The Court of Appeals denied defendant's delayed application for leave to appeal, but the Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration, as on leave granted, of whether defendant was entitled to resentencing on the ground that the trial court had erred by assessing 10 points for Offense Variable (OV) 4, MCL 777.34(1)(a), for having caused the victim a serious psychological injury. 497 Mich 865 (2014).

The Court of Appeals *held*:

The trial court erred by assessing 10 points for OV 4 because there was not a preponderance of evidence to establish that the victim had suffered a serious psychological injury. While the victim might have suffered such an injury, the only information or evidence in the record regarding the victim's psychological state was a reference in the presentence investigation report to her being "visibly shaken." The victim did not present an oral or written statement at sentencing, nor did she testify in any meaningful way at the preliminary examination in regard to her psychological state. Because the correct score of zero for OV 4 altered the applicable minimum sentence range, reversal was required.

Reversed and remanded for resentencing.

Judge GLEICHER, concurring, agreed that insufficient record evidence supported defendant's 10-point score for OV 4, but wrote separately to address how OV 4 should be interpreted and applied. She stated that to justify a 10-point score, a preponderance of record evidence must substantiate that the victim sustained a psychological injury—beyond the initial emotional

trauma precipitated by the crime—that is both so serious and of such duration that the victim would likely require psychological treatment. A lesser showing would not comport with the unambiguous statutory requirements.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *David S. Leyton*, Prosecuting Attorney, and *Christopher D. Larobardiere*, Assistant Prosecuting Attorney, for the people.

*Gary L. Kohut* for defendant.

Kristopher K. McChester *in propria persona.*

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

MURPHY, J. Defendant Kristopher K. McChester pleaded *nolo contendere* to unarmed robbery, MCL 750.530, for which he was sentenced as a second-offense habitual offender, MCL 769.10, to a prison term of 87 months to 22½ years. This Court denied defendant's delayed application for leave to appeal. *People v McChester*, unpublished order of the Court of Appeals, entered January 2, 2014 (Docket No. 318145). Our Supreme Court, however, in lieu of granting leave to appeal, remanded the case to this Court "for consideration, as on leave granted, of whether the defendant is entitled to resentencing based on a misscoring of Offense Variable (OV) 4 (psychological injury to victim), MCL 777.34." *People v McChester*, 497 Mich 865 (2014). We hold that the trial court erred by assessing 10 points for OV 4, considering that the record failed to adequately support a finding that the victim suffered a serious psychological injury. Accordingly, we reverse and remand for resentencing.

Defendant's conviction arose out of a robbery of a gas station. Defendant entered the store, approached the

cashier, asked for cigarettes, and then ordered the cashier to give him everything in the cash drawer. When defendant made the demand, his right hand was in one of his pockets, and he made a furtive gesture suggesting to the cashier that he had a gun in the pocket. The cashier testified at the preliminary examination that defendant had threatened her by stating, "I really don't wanna pull this trigger on you so empty the register and give me everything." The cashier complied, and defendant proceeded to flee with stolen cigarettes and money from the till. According to the presentence investigation report (PSIR), the police observed that the cashier was "visibly shaken" when they arrived at the scene. Aside from this observation, our review of the entire record, including the preliminary examination, sentencing, plea transcripts, and PSIR, fails to disclose any other information or evidence regarding or touching on the cashier's psychological state as a result of the robbery.

Offense Variable 4 concerns psychological injury to a victim and directs a sentencing court to assess 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). Subsection (2) of the statute requires a court to "[s]core 10 points if the serious psychological injury may require professional treatment," with the admonition that "[i]n making this determination, the fact that treatment has not been sought is not conclusive." The only other option under OV 4 is to assess zero points when "[n]o serious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(b). The trial court here assessed 10 points for OV 4. If the correct score for OV 4 is zero instead of 10 points, it would result in altering the applicable minimum sentence range from 50 to 125 months to 43 to 107 months, thereby requiring reversal. MCL 777.64; MCL 777.21(3)(a); *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

On appeal, defendant argues that the trial court committed plain error by assessing 10 points for OV 4 instead of zero points and that defense counsel provided ineffective assistance by failing to object to the scoring. At the sentencing hearing, the trial court initially inquired whether there were any "[a]dditions or corrections" to be made to the PSIR, which included a scoring of the sentencing guidelines variables, and the prosecutor and defense counsel both responded, "No, your Honor." There was no other discussion with respect to the scoring of the variables, and under this Court's decision in *People v Hershey*, 303 Mich App 330, 351-353; 844 NW2d 127 (2013), such circumstances would merely constitute forfeiture and not waiver of alleged scoring errors. Moreover, while defendant here did not challenge the scoring of OV 4 at sentencing or in a motion for resentencing, he did raise the argument in two motions to remand. This included a motion that was filed shortly after appellate counsel was appointed by the trial court pursuant to our Supreme Court's remand order that had directed the trial court to determine defendant's indigency status and the Court of Appeals to appoint appellate counsel if defendant was indeed indigent. *McChester*, 497 Mich at 865. Accordingly, defendant has adequately preserved the issue concerning OV 4. MCL 769.34(10) ("A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.").[1]

---

[1] Had defendant failed to preserve the matter in a motion to remand, and given our ultimate conclusion that the *appropriate* guidelines

We now turn to the substance of the issue and whether the trial court erred by assessing 10 points for OV 4. Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). " 'Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred.' " *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation omitted). On the other hand, we review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

While the victim in this case may very well have suffered a serious psychological injury requiring professional treatment or that may have required professional treatment, considering that defendant convinc-

---

sentence range is 43 to 107 months with an assessment of zero points for OV 4, our review would have been limited to an examination of the issue solely through the lens of the claim for ineffective assistance of counsel, considering that the 87-month minimum sentence imposed by the court falls within the appropriate guidelines range. *Francisco*, 474 Mich at 90 n 8 ("Finally, if the defendant failed to raise the scoring error at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the Court of Appeals, and the defendant's sentence is within the appropriate guidelines range, the defendant cannot raise the error on appeal except where otherwise appropriate, as in a claim of ineffective assistance of counsel."); *People v Kimble*, 470 Mich 305, 310-312; 684 NW2d 669 (2004).

ingly acted as if he had a gun and threatened to shoot her, the only information or evidence in the record regarding the victim's psychological state was the PSIR's reference to her being "visibly shaken." The victim's impact statement in the PSIR revealed that "[a]ll attempts to contact the victim ha[d] been unsuccessful." The victim did not present an oral or written statement at sentencing, nor did she testify in any meaningful way at the preliminary examination in regard to her psychological state, which is to be expected given that the focus of the hearing was on the elements of the crime and defendant's involvement. There simply was not a preponderance of evidence establishing that the victim suffered a *serious* psychological injury.

Contrary to the prosecution's argument, this Court's opinion in *People v Apgar*, 264 Mich App 321; 690 NW2d 312 (2004), does not demand a different conclusion. In *Apgar*, the 13-year-old victim specifically testified to being fearful during a particularly brutal and horrific rape. Here, we do not have any indication from the victim herself regarding her psychological state, and the only information on the issue comes from a cursory, vague, and preliminary observation by police who arrived at the scene. Again, we would not be surprised if the victim had indeed suffered a serious psychological injury; however, the record is essentially barren on the issue and speculation cannot form the basis to affirm a 10-point score for OV 4. Other published opinions by this Court affirming 10-point scores for OV 4 all referred to abundant supporting evidence that simply does not exist in the case at bar. See *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014) (victim expressed feelings of confusion, emotional turmoil, guilt, an inability to trust others, and anger, and she suffered from emotional difficulties);

*People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012) (victim impact statement and letter from the victim reflected that the victim suffered from sleeplessness for weeks, relived the robbery every time she closed her eyes, and constantly feared being robbed by customers); *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010) (PSIR indicated that the victim suffered from depression and that his personality changed as a result of poor health following an assault that required leg amputations); *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009) (child victim of sexual abuse had undergone two series of counseling sessions to deal with abuse). In sum, given the record, reversal is required.[2]

Reversed and remanded for resentencing. We do not retain jurisdiction.

TALBOT, C.J., concurred with MURPHY, J.

GLEICHER, J. (*concurring*). I concur with the majority's holding that insufficient record evidence supported defendant's 10-point score under Offense Variable 4. I write separately because the majority's analysis stops short of comprehensively addressing the threshold question: How should OV 4 be interpreted and applied?

I believe that to justify a 10-point score, a preponderance of record evidence must substantiate that the victim sustained a psychological injury—beyond the initial emotional trauma precipitated by the crime—that is both so serious and of such duration that the

---

[2] In light of our ruling, it is unnecessary to reach defendant's associated claim of ineffective assistance of counsel. To the extent that defendant raises additional issues, they exceed the scope of the Supreme Court's remand order and cannot be considered. *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012).

victim likely requires psychological treatment. A lesser showing does not comport with the unambiguous statutory requirements.

The Legislature adopted the offense variables to facilitate proportionate sentences, *People v Babcock,* 469 Mich 247, 263-264; 666 NW2d 231 (2003), and to promote sentencing uniformity, *People v Smith,* 482 Mich 292, 312; 754 NW2d 284 (2008). Accurate scoring of the variables depends on objective judicial findings grounded in a preponderance of record evidence. *People v Osantowski,* 481 Mich 103, 111; 748 NW2d 799 (2008). Sentencing judges are not free to disregard the precise parameters of the guidelines as articulated by the Legislature. See *id.* at 110-111. Doing so risks disproportionate and widely divergent sentences.

OV 4 authorizes the sentencing court to enhance a defendant's sentence based on a victim's "serious psychological injury." While most of the offense variables relate directly to the circumstances surrounding the crime, OV 4 considers the emotional impact of the crime on the victim. In MCL 777.34, the Legislature instructed that when scoring OV 4, the sentencing court has two options:

(1) Offense variable 4 is psychological injury to a victim. Score offense variable 4 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Serious psychological injury requiring professional treatment occurred to a victim ........................... 10 points

(b) No serious psychological injury requiring professional treatment occurred to a victim ................. 0 points

(2) Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

This language unambiguously reserves a 10-point score for circumstances in which the victim's psychological injuries qualify as "serious" and enduring. In my view, the injuries must transcend those that occur *during* a criminal act.

MCL 777.34 omits any definition of the term "serious psychological injury requiring professional treatment." When construing this language, a court "must ascertain and give effect to the Legislature's intent." *People v Blunt*, 282 Mich App 81, 83; 761 NW2d 427 (2009). "The first step in that determination is to review the language of the statute itself." *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002) (quotation marks and citation omitted). "In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute." *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005). Often, a statutory word or phrase "is given meaning by its context or setting[.]" *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003) (quotation marks omitted). Our interpretation of the statutory language is also appropriately informed by dictionary definitions. *People v Hill*, 486 Mich 658, 668; 786 NW2d 601 (2010). "[W]hat a court should do in construing a term in a criminal statute for which there are a variety of potential definitions is to determine from among those definitions which the Legislature most reasonably intended by the specific context in which the term is found." *Id.* at 669.

I first consider the term "psychological injury." The word "psychological" refers to a person's mental or emotional state. *New Oxford American Dictionary* (3d ed, 2010), p 1409. The word "injury" describes "an instance of being injured," which in turn encompasses being "harmed, damaged, or impaired." *Id.* at 895.

Thus, "psychological injury" denotes harm, damage, or impairment of an individual's feelings, emotions, behaviors, or sense of personal dignity. Anger, fear, anxiety, depression, preoccupation, nightmares, and sleeplessness manifest a person's troubled psychological state, and qualify as apt descriptors of psychological injury.

Surely only an exceedingly rare victim remains emotionally detached during and after the commission of a crime. Whether the offense entails a larcenous theft of one's favorite watch or staring into the barrel of a loaded automatic weapon, "psychological injury" of some degree is expected. Indirectly, the sentencing guidelines capture the gradations of psychological injury associated with crime by incrementally increasing the punishments for offenses likely to cause more lasting emotional harm. For example, armed robbery is a terrifying and powerfully personal crime. Accordingly, armed robbery carries a more severe sentence than larceny from the person, despite that the immediate psychological reactions of the victims may be equally intense. Similarly, first-degree home invasion, MCL 750.110a(2) and (5), merits a longer minimum sentence than burglary, MCL 750.110a(3) and (6).

Indisputably, all crime victims experience mental trauma. Just as no two crimes are exactly the same, different victims react in different ways. Some can put a ghastly event behind them and carry on with their lives. Others suffer more severe emotional trauma than would have been reasonably foreseen given the nature or circumstances of the crime. OV 4 enhances a defendant's sentence based on a victim's emotional response to a crime, foreseeable or not. However, the plain language of this variable limits its breadth. Ten points may be scored only when the psychological

injury qualifies as "serious," and only when that serious injury disrupts a victim's life or functioning such that psychological treatment "is required." Had the Legislature intended that a sentence enhancement would automatically attach to every crime causing any psychological injury, it would not have included the terms "serious" and "requiring professional treatment" in OV 4.

Furthermore, scoring based on psychological injury is an all-or-nothing proposition. Either 10 points are assessed because "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a), or zero points are assessed, signaling that "[n]o serious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(b). I doubt that the Legislature intended the zero-points option to mean that some victims emerge from a crime utterly emotionally unscathed. Many crimes, including robbery, carjacking, stalking, and assault, include fear as an element. Other crimes, including home invasion and criminal sexual conduct, naturally and inevitably cause psychological injury. Despite that crime and psychological injury usually go hand in hand, the Legislature placed the threshold for sentence enhancement on a "serious" injury that "requires professional treatment." This plain language shifts the focus from the emotional reaction experienced by a victim while the crime is in progress to the longer-term psychological consequences of a criminal act.

The *New Oxford American Dictionary* (3d ed, 2010), p 1595, characterizes "serious injury" as "significant or worrying because of possible danger or risk; not slight or negligible." *Id.*, def 3. Synonyms for the word "serious" include "grave," "weighty," and "not . . . trifling." *Webster's New World College Dictionary* (5th ed, 2014),

p 1326. I believe that by using the word "serious" to modify "psychological injury," the Legislature intended to distinguish between baseline psychological injuries, and psychological injuries that are of a degree or magnitude greater than that baseline. Our Supreme Court's opinion in *People v Hardy*, 494 Mich 430, 440; 835 NW2d 340 (2013), buttresses my conclusion.

The defendant in *Hardy* challenged the scoring of 50 points under OV 7, which in that case pertained to whether the perpetrator had engaged in " 'conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.' " *Id.* at 434, quoting MCL 777.37(1)(a). The Court began by reviewing the definitions of the relevant statutory terms. "Designed," the Court explained, "means 'to intend for a definite purpose.' " *Id.* at 440 (citation omitted). The Court next considered the term "substantially increase." Citing a dictionary, the Court described the word "substantial" as designating an " 'ample or considerable amount, quantity, size, etc.' " *Id.* (citation omitted). "To 'increase,' " the Court continued, "means 'to make greater, as in number, size, strength, or quality; augment.' " *Id.* at 440-441 (citation omitted). With these definitions in hand, the Supreme Court summarized: "[I]t is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety *greater by a considerable amount.*" *Id.* at 441 (emphasis added).

In *Hardy*, the Supreme Court specifically advised: "[A]bsent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables." *Id.* at 442. Further, and directly relevant to my analysis of OV 4, the Court elucidated:

> [W]e agree with the Court of Appeals that "[a]ll . . . crimes against a person involve the infliction of a certain

amount of fear and anxiety." Since the "conduct designed" category only applies when a defendant's conduct was designed to substantially *increase* fear, to assess points for OV 7 under this category, a court must first determine a baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue. To make this determination, a court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied. Then the court should determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense. . . . [A]ll relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [*Id*. at 442-443 (second and third alterations in original).]

Applying this analytical framework to OV 4, I believe that a court considering whether a victim has sustained "serious psychological injury" must first acknowledge that every crime victim suffers emotional trauma. That trauma, however, merely sets the stage for a deeper evaluation of the victim's enduring mental state. The Legislature aided courts engaged in this endeavor by designating only a particular subsection of emotional injuries that merit scoring: those involving "[s]erious psychological injury requiring professional treatment." MCL 777.34(1)(a). The victim's failure to actually seek treatment does not prevent scoring 10 points for this offense variable. MCL 777.34(2). That treatment remains unrequested, however, does not eliminate the requirement that the injury be grave or weighty enough to warrant professional intervention.

Why did the Legislature add the "professional treatment" qualifier? This language signals the Legisla-

ture's intent to reserve a 10-point score for cases in which a victim's serious psychological injury produces a consequent need, whether fulfilled or not, for professional care. In other words, the Legislature sought to punish more severely when a defendant's crime disrupts a victim's ongoing emotional life. In reaching this conclusion, I have taken careful note of the word "requiring," which may not be ignored in coming to an understanding of this offense variable. To require is to "cause to be necessary." *New Oxford American Dictionary* (3d ed, 2010), p 1483. As an adjective, "required" means "officially compulsory, or otherwise considered essential; indispensable[.]" *Id.* I glean from the Legislature's conjoining of the words "requiring" and "professional treatment" that to merit a 10-point score under OV 4, a victim must have sustained mental or emotional harm that was grave enough to warrant professional care.

Whether the mental and emotional trauma experienced by a victim meets this standard depends on the existence of evidence supporting a psychological injury other than the emotional upset accompanying the crime. To warrant a 10-point score, the level or degree of psychological injury must be serious enough to require treatment, even if no treatment has been sought. Given our Supreme Court's command in *Hardy*, a preponderance of record evidence must justify a court's finding in this regard. When calculating the sentencing guidelines, a court may consider all record evidence, including the presentence investigation report, the defendant's admissions at a plea proceeding, and evidence introduced during a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). A victim's impact statement, affidavits, therapy records, or the victim's testimony at sentencing (or that of a family member)

also would suffice. See *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012).

Like the majority, in considering the interpretation of the term "serious psychological injury requiring professional treatment," I have borne in mind the prosecution's citation of *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004): "Because the victim testified that she was fearful during the encounter with defendant, we find that the evidence presented was sufficient to support the trial court's decision to score OV 4 at ten points." In the past decade, many of this Court's unpublished decisions have taken this single sentence out of context and inflated its meaning. *Apgar* does not stand for the proposition that normal fear amounts to a serious psychological injury. Rather, *Apgar* involved a horrific, terrifying kidnapping and forcible sexual assault of a 13-year-old girl by a group of men. *Id.* at 324. The victim in *Apgar* suffered a severe psychological trauma grave enough to require professional care, without regard to whether her parents actually secured such treatment.

The evidence in this case amply demonstrated that the victim was shocked and fearful during and after the robbery, as would be expected under the circumstances. The officer's documentation that the victim appeared "visibly shaken" when the police arrived confirms that she sustained a psychological injury at that time. No record evidence suggests, however, that the victim's psychological injury was lasting, serious, or endured beyond the day of the robbery. Not only does the record fail to support that she needed or sought professional treatment, evidence of the victim's long-term psychological state is nonexistent.

The majority correctly holds that because the record evidence failed to demonstrate that the victim sus-

tained a serious psychological injury, zero points should have been assessed for OV 4. I respectfully posit that the inquiry mandated under this variable is far more detailed than the majority opinion would suggest. Absent an evidentiary foundation that a victim's psychological injury is truly "serious" and life-affecting, OV 4 must be scored at zero points.